"Approved by the governor April 29, 1893. Passed;    three-fifths being present.

"The people of the state of New York, represented in senate and assembly, do enact as follows:

"Section 1. Paragraph twenty-four of chapter four hundred and one of the Laws of eighteen hundred and ninety-two, regulating the sale of intoxicating liquors, is hereby amended so as to read as follows:

" '24. Certiorari upon Refusal to Grant License.  Whenever a board of excise in cities of over thirty thousand inhabitants shall have determined to deny an application for a license, or a board of excise in other cities or in any town shall have determined to deny an application for an hotel or an innkeeper's license in such other city or in a town, such board shall file in its office, with such application, a statement of the reasons for such determination, and shall, if so requested, furnish the applicant or applicants a copy of such statement, and of the resolution entered upon its records expressing such determination.  Such applicant or applicants shall have the right to a writ of certiorari to review the action of such board.  The writ may be made returnable to, and the cause heard by, a city court, a superior court, a court of common pleas, or a county court in the county, or the supreme court, or a justice thereof, in the judicial district in which the premises sought to be licensed are situated.  If the writ shall be granted, the board of excise to which it is directed shall, in its return thereto, include copies of all papers on which its action was based, and a statement of its reasons for refusing to grant such application.  If such court shall, upon the hearing, determine that such application for a license has been by such board arbitrarily denied, or denied without good or valid reasons therefor, such court may make an order commanding such board of excise to grant such application, and to issue a license to such applicant upon the payment of the proper license fee.' "

---

(4 Misc. Rep. 1.)

### PEOPLE ex rel. DECKER v. WATERS et al., Excise Commissioners.

(Supreme Court, Special Term, Ulster County.  June 1, 1893.)

INTOXICATING LIQUORS—REFUSAL OF LICENSE—REVIEW.

> Upon the hearing of the return to a writ of certiorari issued under Laws 1893, c. 481, providing that the refusal of an excise board to grant a license to sell liquor may be reviewed by certiorari, the court will not review the facts and reasons which influenced the excise board, but will confine its review to the question of whether in refusing the license the board committed an error of law.

Certiorari by Albert L. Decker to review the action of David V. Waters and others, excise commissioners of the town of Saugerties, in refusing to grant a license.   Proceedings dismissed.

Brinnier & Newcomb, for relator.

Carroll Whitaker, for respondents.

PARKER, J.   The relator seeks by this proceeding to review the action of the respondents, who constitute the excise board of the town of Saugerties, in denying his application for a license.   Proceedings of this character appear to be authorized by chapter 481, Laws 1893.[1]   The members of the board of excise by their return set forth the proceedings at their meeting in May, by which it appears that they granted 13 hotel licenses for the village of Saugerties, and considered relator's application, and rejected it for reasons stated in a memorandum filed by said commissioners.   The facts alleged in the return must be taken to be true.   If false, the relator's remedy is by action.   People v. Dains, 38 Hun, 43; People v. Board of Fire Commissioners, 73 N. Y. 437; People v. Commissioners Dept. Fire and Buildings, 106 N. Y. 64, 12 N. E. Rep. 641.   No errors of law are presented, as was the case in People v. Symonds, (23 N. Y. Supp. 689; this day decided,) and resulting in a reversal of the action of the excise commissioners.   But it was insisted that the statute makes it the duty of the court to review the facts and reasons which induced the board of excise to reject the relator's application.   In other words, it is claimed that the court or judge reviewing the proceedings must examine the facts set forth in the petition and return, and, if he reaches a different conclusion as to the advisability of granting a license than that arrived at by the excise commissioners, he may, by order, reverse their action, and command the board of excise to issue a license to the applicant.   It has been the policy of the lawmaking power in this state not to give any person the right to demand a license.   The statute prescribes that the applicant for a license shall possess certain qualifications, and comply with certain conditions, before the board of excise can be permitted to grant him a license. When these conditions precedent are found to exist, the excise commissioners are required to consider the application and such other facts as they may deem pertinent, and then, in the exercise of their discretion, to grant or deny the application.   The law expects that these administrative officers will exercise the discretion given to them wisely, and for what they shall deem to be the best interests of the municipality which they represent.   This policy of the law not to give any one the right to demand a license has long been well understood.   Indeed, until the passage of chapter 481, Laws 1893, no attempt was made even to provide for any review of the action of boards of excise.   That act does not purport to change the law in any such respect.   Nowhere in it can be found an expression indicating that it was intended to give under any circumstances to any person a clear legal right to a license. As the law now stands, therefore, no person whatever has a right, in a legal sense, to demand a license.   Now, the statute provides that the "court may make an order commanding such board of excise to grant such application, and to issue a license to such applicant upon the payment of the proper license fee."   While in the

[1] See note, 23 N. Y. Supp. 691.

statute this proceeding is called a certiorari, the order which the section quoted authorizes is in the nature of a mandamus, and it is well settled that a mandamus will never issue except where there is a clear and specific legal right to be enforced, or a duty which can be and ought to be performed. High, Extr. Rem. § 9; People v. Supervisors of Greene, 12 Barb. 217; People v. Thompson, 25 Barb. 73-76; People v. Board of Supervisors of Greene Co., 64 N. Y. 600; People v. Campbell, 72 N. Y. 496; People v. Common Council of Syracuse, 78 N. Y. 56-61; People v. Board of Police, 107 N. Y. 235, 13 N. E. Rep. 920; People v. New York Infant Asylum, 122 N. Y. 191, 25 N. E. Rep. 241. It will not be issued in cases of doubtful right. People v. New York Infant Asylum, supra; People v. Board of Supervisors of Greene Co., supra. Now, as the statute omits to give to an applicant an absolute right to a license, and the decisions deny to the courts the right to command by order the giving to another of that to which he has no clear legal right, hence, within legal rules, by which courts must be governed, there is here no foundation for a mandatory order. But it may be said that the legislature could provide for two administrative tribunals to pass upon the same question, of which the board of excise should be the first, and the discretion of the last to be final; that the second or reviewing official should not be governed by the legal rules governing a review of administrative boards, but should pass upon the application in the same manner as the statute authorizes boards of excise to do; that it was intended by this act that the last official to exercise the discretion permitted by the statute should be a court, or a judge thereof. Clearly, such could not have been the intention of the legislature, for it was without power to require the supreme court, or the justice thereof, to perform other than judicial duties, and it will not be presumed that it was intended to transcend its power when the language employed is capable of the other interpretation.

The legislative and judicial are co-ordinate departments of the government, of equal dignity. In the exercise of its proper functions each is alike supreme. The powers of government are apportioned by the constitution, and it does not subordinate any one of the three departments to another when performing the duties belonging to it. Nor can such a result be accomplished indirectly by burdening one department with duties not belonging to it. In 1792 congress passed an act concerning invalid pensions, directing the United States circuit court to take the evidence, and pass upon the claims, subject to revision by the secretary of war and by congress. The judges all agreed that the act was unconstitutional. Hayburn's Case, 2 Dall. 409. The circuit court for the district of New York, consisting of Chief Justice Jay, Justice Cushing, and Judge Duane, said:

"Neither the legislative nor the executive branches can constitutionally assign to the judiciary any duties but such as are properly judicial, and to be performed in a judicial manner."

The circuit court for the district of Pennsylvania, consisting of Wilson and Blair, justices, and Peters, district judge, said:

"Upon the consideration, we have been 'unanimously of the opinion that under this act the circuit court held for the Pennsylvania district should not proceed—First, because the business directed by this act is not of a judicial nature. It forms no part of the power vested by the constitution in the courts of the United States. The circuit court must consequently have proceeded without constitutional authority."

In Ferreira's Case, 13 How. 40, decided in 1851, congress, by two acts, directed the judges of the territorial court of Florida to review, examine, and adjudge all cases of claims for losses, and report his decision, if in favor of the claimants, to the secretary of the treasury, who, if satisfied that they were just and equitable, should pay the amount thereof. From an. adjudication made, an appeal was taken to the supreme court, where the appeal was dismissed for want of jurisdiction, on the ground that the decision was not the judgment of the court, but a mere award. Subsequent to the decision the attention of the court was called to the case of United States v. Todd, and a note was prepared by Chief Justice Taney, and inserted by order of the court. 13 How. 52. In it he stated the result of Hayburn's and Todd's Cases to be that the power proposed to be conferred on the circuit courts of the United States by the act of 1792 was not judicial power within the meaning of the constitution, and was, therefore, unconstitutional, and could not lawfully be exercised by the courts. He concludes as follows:

"In the early days of the government the right of congress to give original jurisdiction to the supreme court in cases not enumerated in the constitution was maintained by many jurists, and seems to have been entertained by the learned judges who decided Todd's Case. But discussion, and more mature examination, have settled the question otherwise; and it has long been the established doctrine, and, we believe, now assented to by all who have examined the subject, that the original jurisdiction of this court is confined to the cases specified in the constitution, and that congress cannot enlarge it. In all other cases its power must be appellate."

The constitution of the United States provides that "the judicial power shall extend to all cases in law and equity arising under this constitution." The state constitution declares "there shall be the existing supreme court, with general jurisdiction in law and equity." It seems to follow that the legislature cannot assign to the supreme court or the justices thereof the performance of administrative duties such as are devolved upon boards of excise, boards of health, and boards of supervisors. So it could not have been intended by the act that the courts or judges should secondarily have the same powers and perform the same duties as boards of excise have primarily. If it was so intended, the provision would be void. In either case the result would not be different. If the views so far expressed are well founded, it follows that the proceedings must be dismissed.